**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Cr. No. 15-195 (GC) |
| KEITH BABBS, | **MEMORANDUM OPINION** |
| Defendant. | |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon the Second Motion for Compassionate Release (the "Motion") under 18 U.S.C. § 3582 (c)(1)(A) (the "First Step Act") filed by *pro se* Defendant Keith Babbs ("Defendant"). (ECF No. 34.) The United States of America (the "Government") did not oppose the Motion. The Court has carefully considered Defendant's submission and decides the matter without oral argument under Local Civil Rule 78.1, which applies to criminal cases under Local Criminal Rule 1.1. For the reasons stated herein, and other good cause shown, the Motion is **DENIED** without prejudice.

**I.    FACTUAL BACKGROUND**

**A.    The Offenses**

From March 2014 to December 2014, Defendant robbed or attempted to rob eight banks or credit unions throughout New Jersey. (ECF No. 22.) During several of these criminal acts, Defendant possessed or brandished a dangerous weapon. (*See* ECF No. 32 at 5[1] (Count One

---

[1]    Citations to page numbers within record documents (*i.e.*, "ECF No.") refer to the page numbers stamped on the documents by the Court's e-filing system.

(stating "had his hand in his jacket pocket underneath his arm to make it appear that he was pointing a weapon at the teller[.]")); 5 (Count Two); 5 (Count Three); 5-6 (Count Four); 6 (Count Five); and 6 (Count Eight).) An arrest warrant for Defendant was issued on January 6, 2015, and Defendant was arrested on January 8, 2015. (ECF Nos. 2, 16.) Defendant pled guilty to seven counts of bank robbery and one count of attempted bank robbery, all in violation of 18 U.S.C. §§ 2113(a) and 2. (ECF No. 26.) Defendant also pled guilty to a violation of supervised release arising from a previous criminal matter. *See United States v. Babbs*, Cr. No. 13-462 (FLW).

On September 9, 2015, Defendant was sentenced to a prison term of 148 months. (ECF No. 28.) Defendant is currently serving out his sentence, and his projected release date is February 11, 2027. Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited July 11, 2023). Additionally, Defendant is currently fifty-one years old. *Id.*

On March 1, 2021, Defendant filed his first motion for a compassionate release under the First Step Act. (ECF No. 30.) Defendant purported to suffer from a variety of comorbidities, including without limitation hypertension, irregular heartbeat, obesity, high blood pressure, and high cholesterol. (*Id.* at 4.) Defendant alleged that the "CDC clearly listed my health conditions as risk factors for developing more severe Covid-19" and that "being confined to a cell with a cellmate, poor ventilation, and no outside recreation is very concerning." (*Id.* at 1-2 (cleaned up).) The Court denied Defendant's first motion on July 16, 2021, because "Defendant's medical records do not support his early release," and because Defendant's medical conditions "are actively being treated and controlled by the BOP medical personnel." (ECF No. 33 at 4.)

Defendant filed this Motion, his second motion for a compassionate release under the First Step Act, on April 14, 2023. (ECF No. 34.) Defendant asserts two primary reasons why his sentence should be reduced: (1) Defendant's family circumstances and the need to take care of his

2

seventy-year-old mother who has declining health and limited mobility, which amounts to an extraordinary and compelling circumstance; and (2) the § 3553(a) factors weigh in favor of his reduced sentence. (*See generally* ECF No. 34-1.)

## II. LEGAL BACKGROUND

The First Step Act was enacted in December 2018. Pub. L. No. 115-391, 132 Stat. 5194 (2018). The First Step Act made one change to criminal statutes relevant to this case as it enables defendants to file motions for compassionate release on their own behalf. Before the First Step Act, the Bureau of Prisons (BOP) was the "sole arbiter of compassionate release motions." *See United States v. Brooker*, 976 F.3d 228, 233 (2d Cir. 2020). Now, the BOP still has "the first opportunity to decide a compassionate release motion and may still bring a motion on a defendant's behalf." *Id.*; 18 U.S.C. § 3582(c)(1)(A).

## III. DISCUSSION

### A. Exhaustion of Administrative Remedies

Under the First Step Act, before a Court can evaluate the merits of a compassionate release motion, the defendant must first exhaust his or her administrative remedies. *See* 18 U.S.C. § 3582(c)(1)(A). Specifically, the First Step Act states in part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment[.]

[*Id.*]

Upon review of the available records and supporting documentation before the Court, it appears that Defendant exhausted his administrative remedies. Defendant filed a request on October 25,

3

2022, through a letter to the Warden of his facility, to have the BOP file a motion with the Court to reduce his sentence.[2] (ECF No. 34-4 at 2.) However, Defendant's request was denied on October 26, 2022. (*Id.*) On December 8, 2022, Defendant filed another request to have the BOP file a motion with this Court to reduce his sentence. (ECF No. 34-5 at 2.) The BOP notified Defendant on December 21, 2022, that "his request for Administrative Remedy was closed and a response was provided to [Defendant] through [Defendant's] Unit Team." (*Id.* at 3.) Defendant then submitted an appeal of the Warden's denial to the BOP's Regional Office on January 4, 2023. (*Id.* at 6-7.) Defendant alleges that he never received a response from the Regional Office. (ECF No. 34-1 at 5.) On February 28, 2023, Defendant submitted an appeal to the BOP's General Counsel, but according to Defendant, the General Counsel failed to respond to him.[3] (*Id.* at 5.)

---

[2]  Defendant did not attach to this Motion a copy of his BP-9 related to his October 25, 2022, request to the Warden. Instead, Defendant attached a BP-9 to this Motion, which relates to Defendant's December 7, 2022 request to the Warden for a motion for a reduced sentence. (*See* ECF No. 34-5 at 2.) Within Defendant's December 7, 2022 request, Defendant asks for "a brief memorandum from the Regional Director with a brief explanation of the delay from the previously submitted BP-9 that was mishandled by staff." (*Id.* (cleaned up).)

[3]  Pursuant to 28 C.F.R. § 542.15, "an inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response." Also, "[a]n inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response." *Id.* "Once filed, response shall be made by the Warden or CCM within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days. . . . If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

Here, Defendant timely filed an appeal within "20 calendar days" of the Warden's response. (ECF No. 34-5 at 1-2, 6-7.) Following Defendant's appeal to the Regional Director, Defendant alleges that the Regional Director did not respond within 30 calendar days. (ECF No. 34-1 at 5.) Defendant considered the absence of a reply as a denial, which he was permitted to do under 28 C.F.R. § 542.18. Defendant then appealed the Regional Director's "denial" to the BOP's General Counsel. Similarly, Defendant argues that the BOP's General Counsel did not respond

Based on the record before the Court, the Court finds that Defendant exhausted his administrative remedies under 18 U.S.C. 3582 (c)(1)(A). Therefore, the Court must next evaluate whether Defendant has extraordinary and compelling reasons that warrant a reduced sentence.

**B.     Defendant's Extraordinary and Compelling Reasons**

Under the First Step Act, a court may reduce a defendant's sentence or order compassionate release if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). If the defendant asserts an extraordinary and compelling reason, then "before granting compassionate release, a district court must 'consider [] the factors set forth in [18 U.S.C.] § 3553(a) to the extent they are applicable.'" *United States v. Pawlowski*, 967 F.3d 327, 329 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A))[4]; *see also United States v. Andrews*, 12 F.4th 255,

---

within 40 days, which then resulted in Defendant filing this Motion on April 14, 2023. (ECF Nos. 34, 34-1 at 5.)

[4]     Section 3582(c)(1)(A) provides:

    (c)     Modification of an imposed term of imprisonment. The court may not modify a term of imprisonment once it has been imposed except that—

        (1)     in any case—

            (A)     the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable, if it finds that—

5

262 (3d Cir. 2021), *cert. denied*, 142 S. Ct. 1446 (2022) (explaining that a defendant must first show extraordinary and compelling circumstances before the court engages in "the next step of the analysis when they weigh the § 3553(a) factors."). The § 3553(a) factors include but are not limited to: "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed"; and "the kinds of sentences available." 18 U.S.C. § 3553. "[A] grant of compassionate release is a purely discretionary decision." *Andrews*, 12 F.4th at 257.

In *United States v. Andrews*, the United States Court of Appeals for the Third Circuit reviewed a district court's denial of a compassionate-release motion. 12 F.4th at 257. The Third Circuit considered whether, when determining if extraordinary and compelling reasons are present, district courts are bound by a version of the United States' Sentencing Commission's guidelines issued before the First Step Act. *Id.* at 259-60. The Third Circuit determined that district courts are not "bound" by the definition for "extraordinary and compelling reasons" in the Sentencing Commission's U.S. Sentencing Guidelines ("U.S.S.G.") Manual § 1B1.13 (the "Policy Statement"). *Id.* at 259. The Sentencing Commission issued the Policy Statement in response to Congress's directive to "describe what should be considered extraordinary and compelling reasons for sentence reduction," 28 U.S.C. § 994(t), but it has not issued one since the enactment of the First Step Act, *Andrews*, 12 F.4th at 255 n.4. The Policy Statement contains an "Application Note," which enumerates "extraordinary and compelling reasons," including a defendant's

---

(i) extraordinary and compelling reasons warrant such a reduction . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

[18 U.S.C. § 3582(c)(1)(A).]

6

medical conditions, age, family circumstances, and "other reasons" as determined by the director of BOP. U.S.S.G. § 1B1.13, Application Note 1(A)-(C). The Application Note also states that BOP can determine "extraordinary and compelling reason[s] other than, or in combination with," these enumerated reasons. *Id.*, Application Note 1(D).

"[A]lthough the policy statement is no longer binding, it still sheds light on the meaning of extraordinary and compelling reasons." *Andrews*, 12 F.4th at 260. Thus, district courts may look to the Policy Statement as a useful guide when considering compassionate release motions. *See id.* ("[T]he District Court did not err when it consulted the text, dictionary definitions, and the policy statement to form a working definition of 'extraordinary and compelling reasons.'").

The statute does not define "extraordinary and compelling," which provides the Court with "flexibility and discretion to consider the unique circumstances" for each motion for compassionate release. *United States v. Doolittle*, Cr. No. 19-501, 2020 WL 4188160, at *2 (D.N.J. July 21, 2020). In defining "extraordinary" and "compelling," district courts have relied on dictionary definitions. *United States v. Andrews*, 480 F. Supp. 3d 669, 682 (E.D. Pa. 2020), *aff'd*, 12 F.4th 255 (3d Cir. 2021) (citing to *United States v. Castano-Vasquez*, 266 F.3d 228, 233 (3d Cir. 2001)). "The ordinary meaning of extraordinary is '[b]eyond what is usual, customary, regular, or common.'" *Id.* at 682-83 (quoting *Extraordinary*, Black's Law Dictionary (10th ed. 2014)) (alteration in original). "And the ordinary meaning of compelling need is '[a] need so great that irreparable harm or injustice would result if it is not met.'" *Id.* at 683 (quoting *Compelling Need*, Black's Law Dictionary (10th ed. 2014)) (alteration in original). The Court considers Defendant's arguments with these principles in mind.

As mentioned above, Defendant asserts two primary reasons why his sentence should be reduced: *first*, Defendant's family circumstances require him to take care of his seventy-year-old

7

mother who has declining health and limited mobility, which is an extraordinary and compelling circumstance; and *second*, the § 3553(a) factors support his argument that his sentence should be reduced. (ECF No. 34-1 at 2.) The Court will evaluate each argument in turn.

### *1. Family Circumstances*

To reiterate, the "Application Note" within the Sentencing Commission's Policy Statement includes the category of family circumstances. U.S.S.G. § 1B1.13, Application Note 1(A)-(C); *see also United States v. McNair*, 481 F. Supp. 3d 362, 369 (D.N.J. 2020) (stating "a defendant may show extraordinary and compelling reasons for compassionate release based on . . . family circumstances"); *see also United States v. Walker*, Cr. No 11-270, 2019 WL 5268752, at *2-3 (N.D. Ohio Oct. 17, 2019) (finding that the defendant's family situation resulted in an extraordinary and compelling circumstance). While the Sentencing Commission's Policy Statement lists extraordinary and compelling family circumstances as "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner," *United States v. Jones*, Cr. No 12-468, 2021 WL 487106, at *3 (D.N.J. Feb. 10, 2021) (citing U.S.S.G. § 1B1.13, cmt. n.1(C)), the Court is permitted to consider analogous family circumstances to the ones outlined in the Policy Statement. *See United States v. Dunich-Kolb*, Cr. No. 14-150, 2020 WL 6537386, at *7 (D.N.J. Nov. 5, 2020) ("[the defendant's] situation—involving care of a parent, as opposed to a child or incapacitated spouse—does not precisely match the ones enumerated in the Guideline or policy statements. But it does bear, if I may put it that way, a family resemblance, and I will consider it."); *United States v. Lisi*, 440 F. Supp. 3d 246, 252 (S.D.N.Y. 2020) ("[t]he animating principle of the Family Circumstances category is that there exists an extraordinary and compelling reason

for release when the defendant has a close family member who is completely unable to care for himself or herself and for whom the defendant would be the only available caregiver.").

Here, Defendant asserts that his mother has "deteriorating health conditions and physical limitations." (ECF No. 34-1 at 5.) Specifically, Defendant's mother suffers from hypertension, diabetes, high blood pressure, obesity, diabetic leg ulcers, chronic back pain as a result of a car accident, and asthma. (*Id.* at 5-7.) Defendant claims his family is unable to care for his mother. (*Id.* at 8-9.)

Upon consideration of Defendant's mother's medical condition and family dynamics, the Court is not persuaded that Defendant has shown extraordinary and compelling circumstances that warrant a reduced sentence. Various courts have found that aging and sick parents do not qualify as extraordinary circumstances. *See, e.g., Jones*, 2021 WL 487106, at *3 ("Many if not all inmates, have aging and sick parents. Such circumstance is not extraordinary." (citing *United States v. Ingram*, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019)); *United States v. Pizzo*, Cr. No. 19-298, 2022 WL 1045235, at *3 (E.D. Pa. Apr. 7, 2022) ("[defendant's] . . . desire to care for his elderly mother is not enough to warrant the extraordinary remedy he seeks."). Moreover, "[t]he impact on family members is an inherent feature of any term of incarceration." *United States v. Cromwell*, Cr. No. 19-00057, 2021 WL 3561244, at *3 (D.N.J. Aug. 12, 2021). Additionally, while Defendant alleges that he is the only available caregiver, (ECF No. 34-1 at 5), Defendant admits that his sister and brother still maintain active relationships with his mother, (*Id.* at 8 (stating that Defendant's brother "is supportive to their mother financially, when needed"); *id.* (stating that Defendant's sister "helps out one day of the weekend which usually amounts to a trip to Walmart, the grocery store, or maybe a bite to eat.") (cleaned up)). To add, Defendant's aunt also lives within New Jersey. (*Id.*) "Though challenging, [Defendant's] family circumstances do not

9

warrant release." *United States v. Crespo*, Cr. No 13-00428, 2022 WL 3572846, at *6 (D.N.J. Aug. 19, 2022), *aff'd*, No. 22-2700, 2023 WL 3172173 (3d Cir. May 1, 2023); *see also Dunich-Kolb*, 2020 WL 6537386, at *8 ("[i]t is not uncommon, however, for a criminal sentence to impose burdens, sometimes severe ones, on family members.") Therefore, Defendant's family circumstances do not amount to an extraordinary and compelling circumstance. *See United States v. Thomas*, Cr. No. 01-058, 2022 WL 538540, at *3 (D.N.J. Feb. 23, 2022) (finding that the defendant's mother's declining health from stage three cancer as well as primary caregiver's declining health did not constitute extraordinary and compelling reasons).

### 2. *§ 3553(a) Factors*

Next, Defendant argues that the § 3553(a) factors weigh in favor of his release. (ECF No. 34-1 at 10-14.) Since Defendant fails to assert an extraordinary and compelling circumstance, the Court need not consider the § 3553(a) factors. *Andrews*, 12 F.4th at 262. However, "[e]ven if the circumstances were extraordinary, consideration of the sentencing factors under 18 U.S.C. § 3553(a) would weigh against an order of release." *United States v. Allen*, Cr. No. 18-216, 2023 WL 314351, at *9 (D.N.J. Jan. 19, 2023) (citing *United States v. Doe*, 833 F. App'x 366 (3d Cir. 2020)).

The Court notes Defendant's extensive efforts to rehabilitate while in prison. Specifically, Defendant has participated and completed a plethora of educational courses offered by the BOP. (*See, e.g.*, ECF Nos. 34-9 at 2-5, 34-10 at 2.) Defendant has also engaged in various work assignments while in prison, such as a food service worker, safety worker, career resource re-entry clerk, and tutor. (ECF No. 34-1 at 13.) Defendant's efforts are commendable steps in rectifying the seriousness of his offenses. For now, however, "[a] reduced sentence here would not 'reflect the seriousness of the offense[s],' 'promote respect for the law,' or 'provide just punishment for

the offense[s].'" *United States v. Manon*, Cr. No. 16-00460, 2022 WL 408958, at *4 (D.N.J. Feb. 10, 2022) (citing 18 U.S.C. § 3553(a)(2)(A)). Nor would it "afford adequate deterrence to criminal conduct." *United States v. Burd*, Cr. No. 21-86, 2023 WL 3271167, at *6 (D.N.J. May 5, 2023) (citing 18 U.S.C. § 3553(a)(2)). Therefore, even if Defendant's family circumstances were extraordinary and compelling, which the Court already found are not, the § 3553(a) factors weigh against Defendant's release.

## IV.  CONCLUSION

For the foregoing reasons, and other good cause shown, Defendant's Second Motion for Compassionate Release (ECF No. 34) is **DENIED** without prejudice. An appropriate Order follows.

_____
**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**